**E-FILED**
Monday, 08 August, 2005  10:46:20 AM
Clerk, U.S. District Court, ILCD



**FILED**

### UNITED STATES FEDERAL COURT

AUG − 5 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **Leslie Allen Smith 07536-033** ) | |
| **Petitioner** ) | |
| **Vs.** ) | **Cause:** |
| **United States of America** ) | **(To be supplied by Court Clerk)** |
| **Respondent** ) | |

### MEMORANDUM IN SUPPORT
### HABEAS CORPUS 2241

The Petitioner herein, Leslie Allen Smith, invokes this Court's jurisdiction, as he is a prisoner being held at the Federal Correctional Facility at Pekin, Illinois 61555, in violation of his Constitutional Rights.

### STATEMENT OF THE QUESTIONS PRESENTED

1. Does a prisoner faced with revocation of his good time credits have a qualified due process right to witnesses in his defense?

2. Does due process require the Government even in a disciplinary case to disclose any material exculpatory information to the defendant?

3. Prosecutor's use of perjured testimony violates due process. Does the same hold true if a Chairman of a disciplinary hearing uses perjured testimony to deprive the defendant of a meaningful hearing?

4  When there is no evidence, i.e. material, photos, prints, tape recordings, no substance evidence, only two (2) confidential informants that based the charge, does that violate due process right to confront the informants or at least question them by or through the Chairman when they were making deals to transfer from one facility to another?

## STATEMENT OF THE FACTS

1.  I was placed in Administrative Detention on November 22, 2003 by Investigator Santisteban "SIS". The detention order said escape.

2.  On January 8, 2004, I was given my UDC Hearing at which time I was told they were only doing what they were told to do. At that time I asked what evidence? They claimed they did not know of any evidence. I stated that any evidence found in my possession-locker-or room, I have a right to know what it was, especially if it was exculpatory-based on Young v. Kahn, 3rd Cir. I explained I don't know unknown person-unknown time. I gave them two (2) witnesses that I felt might help me, and pled not guilty. Exhibit UDC-Exhibit 1.

3.  Based on my write-up "shot" and compared with two others charged in the same case-they are identical in every regard except file numbers. They also do not have any date of any alleged attempt to escape. Attached Exhibit 2, John Lanter; Exhibit 3, GonzaloGomez-Olivas.

4.  I was NEVER INTERVIEWED by SIS, or the investigator assigned while three other inmates were: Rosario 09368-424; Gomez 06022-091; Lanter 02152-025, who gave me statements under oath that they had never even met me prior to being placed in the SHU. Exhibits 4, 5 and 6.

5.  On January 28, 2004, I received word from Supt. Hastings Warden that a polygraph I volunteered to take was ignored. My request was in compliance with Program Statement 5110.13, dated 12/15/99 Polygraph Testing-Purpose and Scope 551.70. Warden's letter attached. Exhibits 7-8.

6.  On February 4, 2004, Mr. John Lanter 02152-025 was found guilty and given 30 days D S time and loss of good time based on confidential informant Jack Sendenos 08010-024 and Jose Ferreira 17053-083, the conclusion by DHO – the informants he said were reliable and he cross-corroborated their statements.

7.  On February 11, 2004, Gonzalo Gomez-Olivas 06022-091 was represented by staff member Ms. Johnson, counselor from Illinois unit, and he was found innocent. Mr. Gomez-Olivas was my cell partner in the SHU at the time of the hearing. Gomez-Olivas' statement in writing is attached, Exhibit 9.

8.  Attached statements from Gonzalo Gomez-Olivas 06022-091, wherein he states emphatically under oath and penalties of perjury that the DHO Chairman told him that he did not believe the two informants. For that reason he was expunging his shot because he believes the informants were lying so they could be transferred. See attached statement, Exhibit 9.

2 of 5

9.    On February 25, 2004, I was seen by DHO. Mr. Olds was my Staff Rep-my Unit
       Manager Iowa 2, and two (2) witnesses testified in my behalf: David Graka and
       David Cahoon. I explained to the DHO Chairman that I had two (2) other
       witnesses and he told me it was too late. I explained that at the time of the UDC
       hearing, I did not know those other two (2) witnesses' names or their impact. But
       one of them was also charged in the case and personally knew we were being set
       up. Rosario 09368-424, and that the second witness, Retsinas 07606-008 had
       first-hand knowledge that Jack and Jose (the informants) were lying so that they
       could be transferred closer to their families. The DHO Chairman said he had too
       much information and needed another week to go through everything. And in that
       time period, Mr. Olds could talk to the other two (2) witnesses, but he would not
       allow me to call them to testify.

10.   The DHO hearing reconvened March 3, 2004. The DHO Chairman stated that he
       found reliance on cross corroboration of the two informants and he chose to
       believe them rather than all of my witnesses. There was no mention of any type
       or kind of physical evidence, just the word of the informants. In giving me DS
       time and taking good time, the DHO said I won't let you do what you did at
       Greenville. I spoke up, "I've never been in Greenville". He told me to hush up,
       and then admitted he was thinking about Mr. Lantern's case. Mr. Lantern had
       been in Greenville.

11.   Mr. Olds was contacted after the DHO hearing about witnesses Retsinas 07606-
       008 and Rosario 09368-424. Because his notes were never given to me or the
       DHO Chairman, Mr. Olds only gave a rough statement saying they basically told
       the same story but one was from MO unit (Rosario) who had also been charged in
       the same case and Retsinas was one of the informants' cell partner and had
       verbally told Warden Hastings, that he'd seen Jack & Jose, the two informants
       comparing notes. Their statements were critical. Mr. Olds admits he trashed
       them after the hearing. Exhibit 10.

12    The alleged attempt to escape was never supported by any physical evidence and
       the report was not conclusive. It states that between June and October all of us
       were placed in the SHU in November. At no date, time or place has there been
       any attempt to escape, or plot to escape, nor has the DHO, in stating what the
       informants said, inquired as to when any alleged plot was to have taken place that
       involved anything that's written on the report.

13    The informants were never separated. Everyone involved in this incident was
       from the Illinois Unit. I was from the Iowa Unit. I was not present during any
       alleged meetings or gatherings nor has it even been stated when anyone actually
       planned anything. There were no tapes, no photos and no official witness (es).

14.  The informants were placed in the SHU protective custody two weeks after we were locked up. They alleged that Gomez and Lanter took out contracts through the Mexicans to kill them once they were placed in the SHU. They were put first in the cell with each other. SIS gave them an opportunity to get their stories together. Later after they turned in paperwork to SIS, they were placed in the cell with Joe Lombardo who stated under oath that they were lying and how he came to that conclusion. Exhibit 11 (4 pages of Lombardo's statement).

15.  On 9-16-04, after complying with administrative remedies, I received a letter from Region G. L. Hershberger, Director, stating they found the report wrong via a "procedural error" and were remanding for a rehearing with "all" rights. Petitioner was never informed of any policy or procedure that permitted a rehearing after punishment had been meted out. Exhibit 12.

16.  U.D.C. Unit Team Disciplinary Hearing was held on 9-30-04. At this time, Petitioner requested witnesses Kerry Lindsey, who was his cellmate when he was first placed in the hole, and Tom McGyver, who had also been a cellmate of Petitioner and knew Senodenas as an informant. Exhibit 13.

     The U.D.C, except S. Wheeler and Ms. Carter, who had served at the first U.D.C. hearing found Petitioner "Not Guilty". Petitioner told them what the Informants said, their informants' numbers and how they came by that information. Still, their verdict was "Not Guilty". Exhibit 14.

17.  On 11-12-2004, DHO Bierschbach again found Petitioner Guilty, with no evidence, just relying upon information from Lt. Santisteben's statements from the two confidential informants. Rehearing orders entirely different write-up, wording and reporting officer. Exhibit 15 pages 2 & 3 of 3 – DHO Report, 2 pages and Exhibit 16, 3 pages.

18.  Complying with Administrative Remedies, Petitioner again appealed to Region and was denied, then appealed to Central Office in Washington and was denied on June 23, 2005, twelve (12) days later than their requested extension of time warranted. Grounds: Witnesses, rewritten report by an officer not even involved originally, and no evidence to support the verdict. Exhibit 17.

## ARGUMENT – CONFIDENTIAL INFORMANTS

The DHO Chairman is required by Policy and law to test the reliability of he informants Program Statement 5270-07, December 29, 1987, Chapter 7, Pages 5-6. "When a discipline decision is based on confidential informants, the UDC or DHO shall document, ordinarily in the hearing report, the finding of reliability of each confidential informant; and the factual basis for that finding. Meeks v. McBride, 81F3d. 717 (7th Cir. 1996), Whitford v. Boglino 63 F3d 527-536 (7th Cir 1995) which elaborates the four (4) methods of establishing reliability.

The write-ups are identical; all charged the same way, same unknown persons, and unknown assistance, through a period of five (5) months. At which time, there is not one reported actual attempt by anyone to escape, not one. A month later, in November, four (4) men are locked up based on two (2) confidential informants whom everyone knows. Gonzalo Gomez Olivas 06022-091 is found innocent and by the same DHO who says the words "they (the informants) are lying or are not credible in Gomez Olivas case. Then how can the DHO Chairman turn around two weeks later and determine that they are now telling the truth? Even if one instead of the two were informants in the Gomez Olivas case, there are only two and the DHO has found one of them not reliable.

The institution policy says P6-6 of Program Statement 5270.07 that "UNCORROBORATED" confidential information from a single informant is insufficient as the sole basis for a finding that the inmate committed the prohibited act.

Therefore, if one was not reliable, that only left one, and as stated there has never been any confiscated papers, any confiscation notices, or any prohibited items seized to my knowledge. None was presented by the DHO. If there was any, I had a right to that exculpatory information for my defense.

The facts are that the DHO Chairman never talked to any of the informants even while he conducted the hearing less than 50 feet from where both were in the same cell. Secondly, if the Chairman read the original reports, he would have found numerous errors. The Petitioner informed the DHO Chairman and the Unit Team that Region messed up and by hand-delivered mail sent the Petitioner not only the confidential reports, but also the names of both informants, their numbers, and their confidential number CI Pek 322-323.

After copying down the facts, it was the Petitioner who gave the Captain the reports. The Petitioner copied relevant information as proof that his rights were being violated and that he was being set up. Petitioner urges this Court to review these pertinent documents.

## APPEAL ADDENDUM

These records were delivered to my cell in the hole before my second hearing and Petitioner asks the Court to order them to be produced for examination.

While looking through this material brought back, I discovered sensitive documents and what looks like internal memos involving the informants and what they had alleged to the SIS Officers here.

This is a brief rundown of those documents:
The information contains notes that Jose Ferreira #1705-083 was assigned CI ID# Pek 0322 while Jack Senodenis 0810-424 was assigned CI ID# Pek 0323.

**Document #1** – is signed by the Warden Ms. Hastings, Assistant Warden Mr. Atherton, and Capt. Gonzales. It says LIMITED OFFICIAL USE DATED DECEMBER 29, 2003.

**Document #2** – is a short document about a Lt. Garrett stating that the investigation may have been compromised. Dated October 5, 1003.

**Document #3** – is from an Officer Brett Simpson to Lt. Buck Dayna, Tammy S., and Felix Sanisteban stating that Joe Lombardo 05594-089 told him that a hit was supposed to take place against the informants picked up on the escape plot 12-7-03.

**Document #4** – is from Shane E. Riedell to Buck Dayna and Felix Santistiban on 10-5-03, stating to correct the memo with Lombardo's name on it and El Conejo ("the Rabbit").

**Document #5** – dated 4/05/04 from DHO Chairman F. A. Bierschbach regarding Leslie Allen Smith IR 1178327 To: The File, (FOI Exempt). The memorandum appears to be what the DHO Chairman relied upon to find me guilty. It says it's a memo in regards to statement 5270.7. Two pages in length.

**Document #6** from Felix Santistiban El Conejo dated 10/05/03 SIS INFORMATION ESCAPE REPLY TO THE ATTENTION OF: S. RIEDELL, SENIOR OFFICER SPECIALIST. It's a translated synopsis page by page of information (consisting of 3 pages) taken from the locker of Jose Ferreira or CI #322, Also references to pages 1-20 that Jose had written.

**Document #7** dated 10/07/03 - from F. Santistiban to Captain G. Baysinger regarding a meeting in the prison hospital between himself and Lt. F. Santistiban where Jose Ferriera was making a "deal". Jose told the Lt. Investigator that he had a multi-page document

concerning escape plans. This is a five-page document but the second page is dated differently. It is dated 12/16/03 FCI PEKIN SIS REPORT 1-3261 Page 2 of page 5. It states at the bottom of the last page 4 of 5 that CI Pek 0322 was Jose Ferreira and CI Pek 0323 was Jack Senodenos.

Making deals with informants is a policy violation. In fact the DHO Chairman was suppose to have discovered if the CIs had any reason to lie or if they were made any deals. Inmate Disciplinary Code 5270.07, page 6, states, informants offering deals in exchange for information should not be allowed and staff have an affirmative duty to investigate.

Petitioner was never interviewed by any investigator. However, he was shown the records by accident or fate, where he gleaned the following facts: The informants are not and never were confidential. In the reports they turned in, there was not one escape plan or plot but both told "several different" versions.

Jose had helicopters, Mexicans coming from Mexico and jumping fences, while Jack had Petitioner first in tunnels, then fences, and none of the stories were credible. F BI Agent Sullivan from the Pekin-Peoria offices was contacted but no evidence was sufficient to warrant her even interviewing this Petitioner. Despite the things said by either informant, there was not one shred of evidence to support any of their alleged reports on the Petitioner.

Petitioner states that in each housing unit there is an officer on duty 24 hours/day – 7 days/week, at least 2 surveillance cameras that can zero in on cells or offenders, in the recreation yard at least three cameras, yet not one photo and not one officer ever witnessed the Petitioner even discussing the weather with the two informants. This was and is a very serious allegation. You would imagine that SIS investigators would have cemented any such investigation with direct observation or camera recordings and, yet, none exists. The only evidence is the two informants, one of which was found by the DHO Chairman to have lied or misrepresented the truth at the Gomez hearing.

The Rules regarding Disciplinary Hearings are going to be argued by the Government. But, if those Rules are taken in the whole context, the Government made the informants "deals" which by the book are forbidden. Once the DHO Chairman found Jose to have lied on Gomez, that discredited his statement against Petitioner. By the Rules, that means only one CI's (Jack's) statement against the Petitioner remained seemingly viable. If the Rules are available to the Petitioner, then one (1) informant with no evidence to support was not enough to have found Petitioner committed any violation of any Rules.

The Region Response never addressed the witness issue in either the first or second hearing. Obviously, if Region determined that there was a procedural error, Petitioner was entitled to new witnesses. The UDC paperwork acknowledges Petitioner did request three (3) additional witnesses: Tom McGyver, Kerry Lindsey and Catalino Rosario.

Petitioner informed UDC Officer Wheeler and she told Petitioner she would see that they were contacted to furnish written statements because all had been transferred to other Federal facilities. At the DHO hearing, Petitioner did not waive their testimony, nor did the DHO Chairman. Section 3, page 2 of 3. The following persons requested were not called for the reasons given. N/A is what is marked.

According to policy, Petitioner had a right to have witnesses, especially if it was not repetitive testimony. Kerry Lindsey was the actual cellmate of Petitioner when Petitioner was locked up. He would have known if any evidence was in the cell that supported the DHO's contention, i.e. 5-foot mats from recreation or duct tape. Neither was available to Petitioner or were found anywhere around Petitioner before or after his arrest. Tom McGyver had also been a cellmate of Petitioner. He would have testified he had heard Jack Senodenos and Jose had been plotting some sort of deal to be transferred out of Pekin.

## CONCLUSION

Petitioner has never seen any policy that states "AFTER" punishment had been meted out and "served", that a report, which punishment has been relied upon, could be considered a procedural error by Region and then rewrote by an officer not even involved originally which allowed him to pick out a story that might sound more credible and submit it as if it is the only version the informants had. This in itself is a lie because documents exist that prove there were many different "stories".

Witnesses that should and could have been allowed to present testimony were not allowed. Also, there is no evidence existing of any so-called waiver as suggested by Central Office. Policy and Rules allow witnesses and allows Petitioner to obtain exculpatory information.

The DHO Chairman found Jose Ferrera innocent. Jose was also charged with A-102 - attempt escape, and found to have lied in the Gomez case. That meant that the DHO Chairman did not find Jose's 20-page informant statement credible.

The Government may argue that Gomez's case was different from Petitioner's case. There were the same two informants and there were separation orders on Gomez, Rosario, Lanter and the Petitioner. Why would separation orders exist if the cases were not related? Lanter was found guilty based on the same information, yet only sentenced to 30 days segregation and 30 days loss of good time. Petitioner was singled out to receive the maximum.

There was no attempt to escape by the Petitioner and he has been a model inmate since his arrival at Pekin. Petitioner has participated in all programs and has a clear record of any and all write-ups with the only exception being this falsehood.

3 of 4

The nine (9) months Petitioner spent in segregation and deprived of his basics – movement recreation, visits that were restricted and limited - was plenty of punishment for a violation that he never committed. The Court can give none of this back. But the DHO also took forty-one (41) days of GOOD TIME and that the Petitioner does want back.

## PRAYER FOR RELIEF

If it pleases this Court, Petitioner would ask that they review all the documents he has set out by date and description, then render its decision. Petitioner has asked for and still volunteers for a polygraph as it has been allowed in the 7th Circuit.

Petitioner prays for restoration of his forty-one (41) days of good time and an order prohibiting any further punishment regarding this incident.

Respectfully,

Leslie A Smith

Leslie Allen Smith 07536-033
Federal Correctional Institution
P. O. Box 5000
Pekin, Illinois 61555

LAS:mfv

4 copies – Clerk of the Court
1 copy – Supt/Warden FCI Pekin
1 copy file.

4 of 4

## **ATTACHED EXHIBITS FOR REVIEW**

**Exhibit #**

1    First Unit Team Decision – Carter served as Chairman

2    John Lanter's Report Id.# 02152-025. Punishment by DHO –
    30 days – 30 days loss of Good Time.

3    Gomez-Olivas Report Id.#06022-091. Found not guilty. Ms. Johnson
    represented. All three reports written by same officer, same day, same
    description.

4    Rosario #09368-424 Statement. He was arrested but not charged.

5    Gomez Statement, also accused.

6    Lanter Statement, also accused

7    Katherine Smith's Statement. She was accused of standing by to aid in the
    escape.

8    Warden Hastings first denial of polygraph

9    Warden Hastings second denial of polygraph

10    Gomez-Olivas Affidavit after his DHO hearing. Staff, Ms. Johnson
    present.

11    Staff Rep. Olds admitting he "trashed" witness statements that were not
    allowed to attend hearing.

12    Lombardo's Statement – He was locked up for protection after telling
    officials of the hit "attempt" to kill Jose and Jack.

13    Regional's First Response – "Procedural Error" disguised to validate
    rewriting a report to secure correction.

14    U.D.C.'s Notice of Witnesses – 3 of which were never contacted.

15    U.D.C.'s Committee Decision – Carter is now member – voted to
    expunge, agreed with Ms. Wheeler, Unit Team Chairman.

16    Two pages D.H.O. 2nd Decision after ReHearing.

17    Three pages D.H.O. First Decision done on original charge.

18    General Counsel's Decision after Appeal to Washington. Was due June
    11, reached Petitioner 17 days late.

19    Discipline Sheet to follow 5270.07 dated 1987

20    Discipline Sheet to follow Master Records

| 1. Name of Institution: | F.C.I. Pekin, IL | | | |
|---|---|---|---|---|

**PART I - INCIDENT REPORT**

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | | 5. Time |
|---|---|---|---|---|
| Smith, Leslie | 07536-033 | January 6, 2004 | | 0900hrs |
| 6. Place of Incident | 7. Assignment | 8. Unit | | |
| FCI Pekin, Community | Unassgn | Iowa 2 | | |
| 9. Incident: Escape | | | 10. Code: 102A | |

**11. Description of Incident :**   Date: 1/6/04   Time: 0900hrs   Staff became aware of incident.

Based on an SIS investigation (I3261B), it was concluded that inmate Smith, Leslie, Reg. No. 07536-033, and other inmates actively

planned an escape from FCI Pekin during the period of June through October 2003. The escape plan involved assistance from

unknown person(s) in the community. This incident report is based on information received from Confidential Informants and items

found in inmate Smith's personal property.

| 12. Signature of Reporting Employee | Date and Time | 13. Name and Title (printed) |
|---|---|---|
| | January 6, 2004 , 0904hrs | F. Santisteban, Lieutenant |

| 14. Incident Report Delivered to above inmate by: | 15. Date Incident Report delivered | 16. Time Incident Report Delivered |
|---|---|---|
| D. Brandli | 1/6/04 | 10:35 A. |

**PART II - COMMITTEE ACTION**

17. Comments of Inmate to Committee Regarding Above Incident *No way, I believe that a indiv named Hosea S. Jack have met with four other guys in res. I have not been influenced by SIS or anybody about this. Unknown individuals should be known to me.*

| 18. A. It is the finding of the Committee that you: | B. ✓ The Committee is referring the charge(s) to the DHO |
|---|---|
| ✓ Committed the following prohibited act: | for further hearing |
| | C. _____ The Committee advised the inmate of its findings and |
| _____ Did not commit a prohibited act. | of the right to file an appeal within 15 calendar days. |

19. Committee Decision is based on the following information:

*Based upon the above report, UDC, refers report to DHO.*

20. Committee Action and/or recommendation if referred to DHO (contingent upon DHO finding inmate committed prohibited act)

*Based upon severity of offense, UDC, recommends max. DSC. Max. DS time, and close. supv. transfer.*

21. Date and Time of Action *1-8-04*   *5:50* (The UDC Chairman's signature next to his name certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

| J.C. CARTER, CAPTAIN | D. HAMILTON | |
|---|---|---|
| Chairman (typed name/signature) | Member (typed name) | Member (typed name) |

Record Copy - Central File Record; Copy - DHO; Copy - Inmate after UDC Action; Copy - Inmate within 24 hours of Part I preparation

(This form may be replicated via WP)

Incident Referred to FBI/USM for Possible Prosecution.
Agent Referred to: _Kubitz_ Date: _1-14-04_
Released for Administrative Processing Date: _1-8-04_

Replaces BP-288(52) of Ja

UDC-Exhibit-1

DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

Name of Institution: **F.C.I. Pekin, IL**

## PART I - INCIDENT REPORT

| Name of Inmate nter. John | 3. Register Number 02152-025 | 4. Date of Incident January 6, 2004 | 5. Time 0900hrs |
|---|---|---|---|
| Place of Incident CI Pekin, Community | 7. Assignment Unassgn | 8. Unit Illinois 1 | |
| Incident: Escape | | | 10. Code: 102A |

1. Description of Incident : Date: 1/6/04 Time: 0900hrs Staff became aware of incident.

ased on an SIS investigation (I3261C), it was concluded that inmate Lanter, John, Reg. No. 02152-025, and other inmates actively lanned an escape from FCI Pekin during the period of June through October 2003. The escape plan involved assistance from nknown person(s) in the community. This incident report is based on information received from Confidential Informants and items ound in inmate Lanter's personal property.

| 12. Signature of Reporting Employee | Date and Time January 6, 2004 0904hrs | 13. Name and Title (printed) F. Santisteban, Lieutenant |
|---|---|---|
| 14. Incident Report Delivered to above inmate by: D. Brandis | 15. Date Incident Report delivered 1/6/04 | 16. Time Incident Report Delivered 10:00 Am. |

## PART II - COMMITTEE ACTION

**17. Comments of Inmate to Committee Regarding Above Incident**

This is not true.

| 18. A. It is the finding of the Committee that you: ___ Committed the following prohibited act: ___ Did not commit a prohibited act. | B. XX The Committee is referring the charge(s) to the DHO for further hearing C. ___ The Committee advised the inmate of its findings and of the right to file an appeal within 15 calendar days. |
|---|---|

**19. Committee Decision is based on the following information:**

Refer to DHO due to seriousness of the offense
of planning to escape from FCI Pekin.

**20. Committee Action and/or recommendation if referred to DHO (contingent upon DHO finding inmate committed prohibited act)**

Recommend 60 days DS and 41 days loss of GCT.

**21. Date and Time of Action** 1-9-04 3:20pm (The UDC Chairman's signature next to his name certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings)

| Chairman (typed name/signature) | M. Busch | Member (typed name) |
|---|---|---|
| | Member (typed name) | |

Record Copy - Central File Record; Copy - DHO; Co[...] [...]ours of Part I preparation

(This form may be replicated via WP)

Incident Referred to FBI/USM for Possible Prosecution.
Agent Referred to: Sullivan Date: 12-c-c5
Released for Administrative Processing Date: 6-c-5

Replaces BP-288(52) of Jan. 25

Jack
Exhibit 2. John Lanter

**1. Name of Institution:**    **F.C.I. Pekin, IL**

## PART I - INCIDENT REPORT

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| Gomez-Olivas, Gonzalo | 06022-091 | January 6, 2004 | 0910hrs |

| 6. Place of Incident | 7. Assignment | 8. Unit |
|---|---|---|
| FCI Pekin, Community | Unassgn | Illinois 2 |

| 9. Incident: Escape | 10. Code: 102A |
|---|---|

**11. Description of Incident :**    Date:   1/6/04    Time:   0910hrs    Staff became aware of incident.

Based on an SIS investigation (I3261A), it was concluded that inmate Gomez-Olivas, Gonzalo, Reg. No. 06022-091, and other inmate(s) actively planned an escape from FCI Pekin during the period of June through October 2003. The escape plan involved assistance from unknown person(s) in the community. This incident report is based on information received from Confidential Informant(s) and items found in inmate Gomez-Olivas's personal property.

| 12. Signature of Reporting Employee | Date and Time | 13. Name and Title (printed) |
|---|---|---|
| | January 6, 2004 , 0910hrs | F. Santisteban, Lieutenant |

| 14. Incident Report Delivered to above inmate by: | 15. Date Incident Report delivered | 16. Time Incident Report Delivered |
|---|---|---|
| D Brandis | 1/6/04 | 10:20 A |

## PART II - COMMITTEE ACTION

**17. Comments of Inmate to Committee Regarding Above Incident**

**18. A. It is the finding of the Committee that you:**
_____ Committed the following prohibited act:

_____ Did not commit a prohibited act.

**B.** _____ The Committee is referring the charge(s) to the DHO for further hearing

**C.** _____ The Committee advised the inmate of its findings and of the right to file an appeal within 15 calendar days.

**19. Committee Decision is based on the following information:**

**20. Committee Action and/or recommendation if referred to DHO (contingent upon DHO finding inmate committed prohibited act)**

**21. Date and Time of Action** _____ (The UDC Chairman's signature next to his name certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

_____    _____    _____
Chairman (typed name/signature)     Member (typed name)      Member (typed name)

Record Copy - Central File Record; Copy - DHO; Copy - Inmate after UDC Action; Copy - Inmate within 24 hours of Part I preparation

(This form may be replicated via WP)        Replaces BP-288(52) of Jan. 88

Exhibit 3 - Gomez Gonzalo

Exhibit 4

I' Am CATALINO ROSARIO 09368·424 question WAS
ASked by MR. Smith. 07536-033.--did I Ever Meet
him. outSiDe OF S.H.U. My ANSWER. IS. -I DO NOT
Know MR. Smith. I have Never been Introduced
To him. Nor do I Know Any. Reason why.
Some one. would. SAy I DO.

MR Smith. ASked. Counselor MR HAymon
In Front OF My Cell. on 1-8-04 IF SHe thought
IT would. be A good. idea To write statement.
She SAid. yes.
AND. Maybe D. H.O would call me As witness.
I Agree. To testiFy under. penalties. OF.
perjury. That. I have Never ever MET.
MR. Smith. Anywhere before.

Respectfully

C Rosario
CATALINO ROSARIO
09368·420

Exhibit 4

To DHO

1-0-7
Exhibit 5

FR G. Gomez 06022-091
For. Statement for Smith 07536 033

My name is Gonzalo Gomez olivas # 06022-091
I am in the SHU at pekin and its Been
Alledged That I know Leslie Smith 07536 033
and I state under The penalties of perjury. I
Have never Ever met mR Smith outside of The Corrent
Time in SHU when it was Discovered we were
alledged To be in The same Case I Agree To Testify
for Him
I Do not Know mR Smith 07536 033
I swear. To This under The penalties of perjury
an This The 6 Day of January 2004

_Gonzalo Gomez Olivas_
Gonzalo, Gomez O o 6022091

1-8-04

Exhibit 5

I John K. Ranter 02152-025    1-12-2004

Will state in this affidavit or any court of law, while being at FCI Pekin Illinois from July 2001 when I arrived at Pekin or anytime in my life, I have never talked to or seen L. Smith 07536-033 or talked to this man through any person or persons or ever heard of his name through any person or persons until I was placed in the SHU recreation cage on the week of January 6th 2004.

John K. Ranter

Exhibit 6

## KATHERINE SMITH'S STATEMENT

I have been married to Leslie Allen Smith 07536-033 since April 22, 1988. I'm quite certain that identifies me as his wife and not his "girlfriend".

I want it clearly understood that I was unaware of any plan of escape from Pekin B.O.P. I would not be involved with plans to escape. I do not appreciate the falsehood alleged against me. The liars should be made to apologize.

Katherine Smith

**EXHIBIT 7**



**U. S. Department of Justice**

Federal Bureau of Prisons

Federal Correctional Institution

2600 South Second Street
P.O. Box 7000
Pekin, Illinois 61555-7000

DATE: January 28, 2004

REPLY TO
ATTN OF:  Suzanne R. Hastings, Warden

SUBJECT:  Response to Inmate Request to Staff Member

TO:  SMITH, Leslie
Reg. No. 07356-033
Iowa 2/SHU

This is in response to your Inmate Request to Staff Member received
January 23, 2004, wherein you request to be given a polygraph examination
to prove your innocence on an Incident Report you received for attempted
escape.

A review of this matter reveals you are currently awaiting the Disciplinary
Hearing Process. Once the Disciplinary Hearing Process is complete and
you are not satisfied with the outcome, you may appeal the Disciplinary
Hearing Officer's decision in writing per Program Statements 5270.07, Inmate
Discipline and Special Housing Units and 1330.13, Administrative Remedy
Program.

I trust this information addresses your concerns.

EXhibit 8



UNITED STATES GOVERNMENT

# *memorandum*

**FEDERAL CORRECTIONAL INSTITUTION**
· *PEKIN, ILLINOIS*

**DATE:** March 24, 2004

**REPLY TO**
**ATTN OF:** Suzanne R. Hastings, Warden

**SUBJECT:** Inmate Request to Staff Member

**TO:** SMITH, Leslie
Reg. No. 07536-033
Iowa 2

This is in response to your Inmate Request To Staff dated March 6, 2004, wherein you request to be given a polygraph test pertaining to your guilty finding from the Disciplinary Hearing Officer.

An investigation into this matter reveals, you have already been through the Disciplinary Hearing (DHO) process. Policy Statement 5270.07, Chapter 8, Appeals of Disciplinary Hearing Acts, Section 541.19, states, the Reviewing Official for UDC is the Warden. The Reviewing Official for DHO is the Regional Director. If you are not satisfied with the outcome of your DHO, you may file through the Administrative Remedy process to the respective Regional Director.

In support of your concerns, you have raised issues involving another individual and your belief of the facts surrounding his case. Please be advised that any decisions related to another inmate are not relevant to your situation and, in fact, do not support your request.

Based on the above information, your request for a polygraph examination is denied. If you have any further concerns, you may appeal this decision through the Administrative Remedy process.

Exhibit 9

EXHIBIT 7

To: Les Smith 07536-033

From: Gomez Gonzalo 06022-091

Date: 3-7-2004

Re: Affidavit for Les Smith 07536-033

## Affidavit and Oath

I Gomez Gonzalo 06022-091 do hereby swear under oath and all penalties of perjury, I do state affirmatively that I agree to testify to this statement and fact in any Court, Civil-Criminal-State or Federal that on 2-18-2004 DHO officer found me innocent of a code 102 A incident report "planning an escape from FCI Pekin during the period of June through October 2003. DHO officer stated in front of myself Gomez Gonzalo and Counselor Mr. Johnson, SH. 2 unit that in his "DHO" hearing that he DHO "is going to find Gomez Gonzalo not guilty of the incident report cause DHO believed the informants against Mr. Gomez Gonzalo lied because the informants are trying to transfer from FCI Pekin.

Gonzalo Gomez Olivas
Gomez Gonzalo Olivas
06022-091

Exhibit 10.

EXHIBIT 10

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) MR OLDs UNIT MANAGER | DATE: 3-9-04 |
|---|---|
| FROM: Leslie Smith | REGISTER NO.: 07536-033 |
| WORK ASSIGNMENT: SHU | UNIT: IA 2 - SHU 234 D.S. |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

MR. OLDs, When we had our First DHO Hearing Feb 25- the Chairman
would Not allow us to Call our other 2 Witnesses - Dean and Rosario
Because He said I Should have had their Names at UDC - correct. But He
would Allow you to Talk to them, and provide a Statement. I heard you
say that they BASICally SAID the SAme thing my other 2 Witnesses SAID
But I SAW you HAD "Notes" on exactly what they SAID which the DHo
Chairman did Not Get. Because I do take this Very Very serious I need exact
Information And All Records - Rosario was Charged in this SAme case - I don't Know what
he told you, Dean was the one informants cell partner and He told the Warden He Knew JACK
was lying and using our Names to get TRANSFERRED - I don't Know what they said to you that
would have been like my First Two witnesses - Do you have the Notes you had Written
down- MAY I have a copy For Region Appeal - OR can you Remember what they told you Please.

(Do not write below this line)

DISPOSITION: The DHO Suspended this hearing in order to review the numerous
statements which I provided on your behalf. They also Allowed for me to
interview the two (2) Additional witnesses, Kotsinas and Rosario. The DHO
had previously indicated to me that he would only entertain a verbal
summary statement as to their testimony. My statement during the hearing
was that both witnesses questioned the Credibility and motives of the Known
informants in this case. With the exception of my notes, All witness statements
in my possession have Been returned to you. My notes were furnished shortly
After your hearing. My statements and representation during your hearing
should be well documented in your DHO Report.

Admission to Destroying
Record.

| Signature Staff Member J. Olds, un | Date 3/11/04 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)            This form replaces BP-148.070 dated Oct 86

Exhibit 11

Exhibit 11

Pages 1-4

cell 235    3-2-2004

My name is Joseph Lombardo ID number 05894-089
I was being housed a 7CT Pekin, unit H-1
During the mouths of Dec & Jan I housen
in Special housing cell 148 & 150 at that
time I had two diffent cell mates there
names are Jose Ferreia ID number 17053-083
& Jack Senadenos ID number 08.010.424. Both
these in mates are Prison informents
use By the staff and receave special
favers in return this was stated to me
By Both these inmates. During the time
I celled with them both these inmate thay
told me how thay set up a few on
a bull-shit escape/plan and turned it
over to (SIS). Both these inmates talk about
setting up one inmate in perticaler his
name John lanter ID number 02152025 at one
point John letle Jack Senadenos read some
old paper wark from a nother prison
this paper work spoke about how John
the lonter god a shot and tranfer to a
nother prison the paper work spoke of attemp-
ed ascape. Jack Senadenos stated to me that
Jose Ferriea brought this information to jack
about a few spainish inmates how was talking
about how would it Be like to plain ascape.
come to here there was (NO) TAlk at all. This
was a plan Jose Ferriea had put to gether

Exhibit 12. page 1-of 4

to get one spainish inmate off the Compound
this spainish inmate new Jose Ferrier
from a nother prison and new Jose Ferrier
was a informent at the copple a prisons.
He was housed in. Jack stated to me
he was and needing John Lonter brought
in to this plan even though John Lonter
did not Know any of these outher inmate
in valoed. He new Jose Ferria. Jack states
with (Lontern) in this plan (SIS) would
take the information he had and run
with it he stated the SIS offices
Lt Sandiston wasn't to smart. He said
By the time he would cauch on to
his and Jose plan it Be to later. Jack
also stated. He plased a photo graft
of a helicoper in John Lontere propaty
be cause he new John Lonter never lock
his loch with his legel work. Jack told
me that if SIS would sirch John Loek and
the informator would pan out for them.
I no John for about 3 year now John
what you call a good old Boy he would
give his shirt of his Back to help a person
out. Jack Salandenas use John all the
time how i no this Be cause we where
all in the same unit and Jack is
Known for Fuchin people over and ashing
every one how can in to ouver unit

to look at there PSI - and there leged
paper to find out any information he
can us² on them to start truble or use
them any whay he could and that
what he did with John Lonter. He use
the information that he trick Lonter in
to showing him fit perfect in the
plan him and Jose Terrica had going
on. Both Jach é Jose stated By the
time SIS find out and 10 to 1 thay whont
that Both will get a time cut Jack
stated his Been doing this type of
stuff for a few yeares Jose state
he doing this Because he has
a life sentice. Jack é Jose stated
once in a whysel a real case come
a long, But most of the time thay
have to make stuff up to keep there
self looking good for there owners SIS
Lts.
So Jach é Jose put there plan in to work
Jose would start talking with the
spanish inmates and pass information
over to Jach, Jack would run and
tell every Body under the Sun
what he heard to start roomers
on the Coumpound so other informents
would start talking to SIS and when
him and Jase would hadd there information.

4 of 4   ЦЦ

over. Jach & Jose Known peken staff
would jump for this. Do to the fact
that two year Before there was a prison
Benke at Peken, And STS would not alow
this to happen a gen.

Joseph dom lards
05994-089.

**Regional Administrative Remedy Appeal**
Part B — Response

Name: SMITH, Leslie
Reg. No.: 07536-033
Admin. Remedy No.: 333519-R4

This is in response to your request for administrative relief regarding the decision of the Discipline Hearing Officer (DHO) on March 3, 2004, in which you were found to have committed the prohibited act of Attempted Escape, Code #102A.

We have found a procedural error, therefore, a rehearing of the charge against you will be scheduled and you will be afforded all rights in accordance with Program Statement 5270.07, Inmate Discipline and Special Housing Units. At the conclusion of that hearing, you may reinstate any contentions through the Administrative Remedy process to the Regional Office.

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, D.C. 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

_9/16/04_
Date

G. L. HERSHBERGER, Regional Director

$Exhibit$
$13$
Region Response.

BP-S294.052  **NOTICE OF DISCIPLINE HEARING BEFORE THE (DHO)**  CDFRM
MAY 94
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

FCI PEKIN, PEKIN, IL
Institution

9-30-04
Date

TO: _____ Ishe                    Reg. No.: 07536-033
ALLEGED VIOLATION(S):

ESCAPE

DATE OF OFFENSE: 7/6/04                    Code No.: 102 A

You are being referred to the DHO for the above charge(s).

The hearing will be held on: NEXT Available    (A.M./P.M.) at the following location:
Chute time

You are entitled to have a full-time staff member represent you at the hearing.  Please indicate below
whether you desire to have a staff representative, and if so, his or her name.

I (do) ✓ (do not) _____ wish to have a staff representative.
If so, the staff representative's name is: COUNSELOR, HAYMON

You will also have the right to call witnesses at the hearing and to present documentary evidence in your
behalf; provided, calling your witnesses will not jeopardize institutional safety.  Names of witnesses you
wish to call should be listed below.  Briefly state to what each proposed witness would be able to testify.

I (do) ✓ (do not) _____ wish to have witnesses.

NAME: TOM MCGIVER)                Can Testify to: Same as Rosario
DEAN

NAME: KERRY LINDSEY              Can Testify to:
CATALINO ROSARIO    07368-424 - Knew Senadenas'
Senadenas were setting up a group of
NAME: DAVE CALHOUN    Can Testify to: he could be tortured
weightlifting w/Smith when Senadenas approached him
DAVE GRAIKA - Told me Jack Senadenas wanted to go with him

The Discipline Hearing Officer will call those witnesses (scof) as inmate who are reasonably available,
and who are determined by the DHO to have information relevant to the charge(s).  Repetitive witnesses and
repetitive character references need not be called.  Unavailable witnesses may be asked to submit written
statements.

If additional space is needed, use the reverse side of this form.  Date, sign, and return this form to the
DHO.

DATE: 9-30-04    SIGNATURE: _____ 07536-033

Notice of hearing before DHO given inmate 9-30-04 (2:29P)  J. CARTER
                                          Date/Time        Staff Printed Name/Signature

(This form may be replicated via WP)                    Replaces BP-294(52) of JAN 88

Exhibit #14

U.S. DEPARTMENT OF JUSTICE          FEDERAL BUREAU OF PRISONS

| 1. Name of Institution:    F.C.I. Pekin, IL | | | 1246835 |
|---|---|---|---|

### PART I - INCIDENT REPORT

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| Smith, Leslie | 07536-033 | January 6, 2004 | 0900hrs |

| 6. Place of Incident | 7. Assignment | 8. Unit | |
|---|---|---|---|
| FCI Pekin, Community | Unassigned | Iowa 2 | |

| 9. Incident:   Escape | 10. Code:   102A |
|---|---|

| 11. Description of Incident :    Date:   1/6/04     Time:   0900hrs     Staff became aware of incident. |
|---|
| Based on an SIS investigation (I3261B), it was determined that inmate Smith, Leslie, Reg. No. 07536-033, and other inmates actively |
| planned an escape from FCI Pekin during the period of June 2003 through November 2003. Specifically, inmate Smith planned |
| to escape from FCI Pekin, on December 25, 2003, by climbing the perimeter fence, utilizing welding gloves, duct tape obtained from |
| CMS and blue recreation mats for upper body protection against the razor wire. Smith planned to have his girlfriend Katherine Smith |
| meet him with a vehicle in the local community with a gun and a calling card, once he was over the fence. This report is based on |
| information received ~~from~~ confidential informants and physical evidence discovered in inmate Smith's personal property. |

| 12. Signature of Reporting Employee | Date and Time | 13. Name and Title (printed) |
|---|---|---|
| | September 29, 2004 (10:11am) | G. Pagli, Lieutenant |

| 14. Incident Report Delivered to ~~above inmate~~ by: | 15. Date Incident Report delivered | 16. Time Incident Report Delivered |
|---|---|---|
| D. Brandis | 9/29/04 | 8:15 p. |

### PART II - COMMITTEE ACTION

17. Comments of Inmate to Committee Regarding Above Incident  This was a plan by Terreira and Senodenos, both CI's, to be transferred from this institution.

| 18. A. It is the finding of the Committee that you: | B. ____ The Committee is referring the charge(s) to the DHO |
|---|---|
| ____ Committed the following prohibited act: | for further hearing |
| | C. ____ The Committee advised the inmate of its findings and |
| ____ Did not commit a prohibited act. | of the right to file an appeal within 15 calendar days. |

19. Committee Decision is based on the following information: INVESTIGATION WAS COMPLETED ON 12/29/03.
EXEC. STAFF CONCURRENCE RECEIVED ON 1/6/04, Appeal decision REC'D 9/28/1
I/R REWRITTEN. BASED UPON eye witness REPORT, INMATE'S STATEMENT,
INVESTIGATION (I-3261C), PIRA, No Hist. of I/Repts. UDC REFERS to DHO for
SANCTIONS.

20. Committee Action and/or recommendation if referred to DHO (contingent upon DHO finding inmate committed prohibited act)
As Smith was NOT identified as AN involved iNMATE iN THE SIS Report
& in fact is NOT mentioned ANYwhere UNTiL the Conclusion & then only
Stating he should be Separated. It is UDC RECOMMENDATION THE I/R be EXPUNGED

21. Date and Time of Action 9-30-04 4:35 pm (The UDC Chairman's signature next to his name certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

S. L. Wheeler       J. Carter

Chairman (typed name/signature)     Member (typed name)       Member (typed name)

Record Copy - Central File Record; Copy - DHO; Copy - Inmate after UDC Action; Copy - Inmate within 24 hours of Part I preparation

(This form may be replicated via WP)          Replaces BP-288(52) of Jan. 88

Exhibit 15

EXHIBIT  I

BP-S294.052  **NOTICE OF DISCIPLINE HEARING BEFORE THE (DHO)**    CDFRM
MAY 94
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

---

FCI PEKIN, PEKIN, IL
Institution

_1- 8-04_
Date

TO:  ___Smith, L.___                    Reg. No.:  _07536-033_

ALLEGED VIOLATION(S):  ___ESCAPE___

DATE OF OFFENSE:  _1-6-04_                Code No.:  _102A_

You are being referred to the DHO for the above charge(s).
The hearing will be held on:  _Available_  at  _9:00_  (A.M)/P.M.) at the following location:

---

You are entitled to have a full-time staff member represent you at the hearing.    Please indicate below
whether you desire to have a staff representative, and if so, his or her name.

I (do)  ✓ (do not) _____ wish to have a staff representative.

If so, the staff representative's name is:  ___MR Olds___

You will also have the right to call witnesses at the hearing and to present documentary evidence in your
behalf; provided, calling your witnesses will not jeopardize institutional safety.  Names of witnesses you
wish to call should be listed below.  Briefly state to what each proposed witness would be able to testify.

I (do)  ✓ (do not) _____ wish to have witnesses.

| NAME: | DAVID GRAKIA | Can Testify to: Told me to stay away |
| from Jack and Jose and they are Dad news |

| NAME: | DAVID Cahoon | Can Testify to: He works out with |
| me - And has never seen me with other people |

| NAME: | | Can Testify to: |

---

The Discipline Hearing Officer will call those witnesses (Staff or Inmate) who are reasonably available,
and who are determined by the DHO to have information relevant to the charge(s).  Repetitive witnesses and
repetitive character references need not be called.  Unavailable witnesses may be asked to submit written
statements.

If additional space is needed, use the reverse side of this form.  Date, sign, and return this form to the
DHO.

DATE:  _1-8-04_    SIGNATURE: X _HAND CUFF From behind_

Notice of hearing before DHO given inmate _1/8/04_  by  _D. HAYMON_
                                   Date/Time        Staff Printed Name/Signature

(This form may be replicated via WP)                Replaces BP-294(52) of JAN 88

_tembuxUc_

Exh. 16

# DISCIPLINE HEARING OFFICER REPORT
## U.S. DEPARTMENT OF JUSTICE

2 5 6

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

| INSTITUTION | FCI Pekin | INCIDENT REPORT NUMBER | | | 1178327 |
|---|---|---|---|---|---|
| INMATE NAME | Smith, Leslie | REG NO | 07536-033 | UNIT | IA 2 |
| DATE OF INCIDENT | 1-6-04 | DATE OF INCIDENT REPORT | | | 1-6-04 |
| OFFENSE CODE(S) | 102A | | | | |
| SUMMARY OF CHARGES | Attempted escape | | | | |

**I. NOTICE OF CHARGE(S)**

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on

date/time by: 1-6-04 @ 1035 by Lt. Brandis

B. The DHO Hearing was held 3-3-04 at (time) 0930

C. The inmate was advised of his/her rights before the DHO by (staff member):

D Haymon on (date) 1-8-04 and a copy

of the advisement of rights form is attached.

**II. STAFF REPRESENTATIVE**

| A. Inmate waived right to staff rep. | Yes | | | No: | X | |
|---|---|---|---|---|---|---|

| B. Requested staff representative appeared. | | J. Olds |
|---|---|---|

c. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:

N/A

| D. Staff representative was appointed: | | N/A |
|---|---|---|

E. Statement of Staff Representative:

Mr. Olds acknowledges fulfilling the duties as staff representative and that the inmates due process rights had been afforded. He did state; "I have met with Mr. Smith on numerous occasions. I have several written statements from other inmate witness. I have spoken with them and they stated that another inmate fabricated the whole incident to set him up."

**III. PRESENTATION OF EVIDENCE**

| A. Inmate admits: | | denies: | X | |
|---|---|---|---|---|

B. Summary of inmate statement:

Inmate Smith states; "I wasn't involved in any plan to escape. I didn't know why I was being held in the hole. I was set up by other inmates. I am getting out soon. Why would I try to escape?"

C. Witness(es):

| 1. The inmate requested witness(es). | | Yes: | X | No: | | |
|---|---|---|---|---|---|---|

2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.)

Inmate Grakia #03997-089 stated; "I wasn't told anything about it. I told him to steer clear of certain inmates because I thought they were wearing a wire on the compound. Another inmate came and asked me about Smith's background"

Page 1 of 4

Exhibit 1. - 3 pages

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

---

Inmate Cahoon #06003-025 stated; "I know nothing about it.  We workout together 3-4 times a week."

3. The following persons requested were not called for the reason(s) given.

N/A

| 4. Unavailable Witnesses submit written statements and those statements received were considered. | Yes | | No | | N/A | X | |

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

SIS Report from Lt. Santisteban, dated 12-29-04

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate.  The confidential information was documented in a separate report.  The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

**IV. FINDINGS OF THE DHO**

| X | A. The act was committed as charged. | |
|---|---|---|
| | B. The following act(s) was committed: | |
| | C. No prohibited act was committed: Expunge according to Inmate Discipline PS. | |

**V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)**

The DHO finds that you committed the prohibited act(s) of Attempted Escape, 102A.  This is based on the reporting staff's statement that on 1-6-04, at approximately 0900, an investigation concluded that during the period of June through October 2003 you and other inmates actively planned an escape from FCI Pekin.  The escape plan involved the assistance from unknown persons in the community.

The DHO also relied upon as evidence, the SIS report from Lt. Santisteban.  This report contains information provided to the SIS Office, by confidential informants.  The DHO finds their eyewitness account is more reliable, based upon independent factual cross corroboration of the incident.  The DHO determined that including the substance of the confidential information would jeopardize institution security and will therefore not be disclosed to you. However, it is provided in a separate FOI EXEMPT memorandum.

You appeared before the DHO **denying** the charge(s) as noted in section 3 of the report.

Your staff representative was present, however had no information towards mitigation of the charges.  He also submitted statements from three additional inmates.  However, they were not requested during your UDC hearing and there therefore not considered.

The DHO considered the testimony of your witnesses, however gave greater weight of evidence to the statement of the reporting staff, acknowledging the duty and obligation to report the truth and submit accurate statements.

Additionally, the information provided by Confidential Informants offers independent cross corroboration.  It is therefore, more credible and worthy of belief.

Therefore, the DHO finds you committed the prohibited act(s).

Exhibit 2-17 2 prge of 3

| VI. SANCTION OR ACTION TAKEN |
|---|
| 60 Days DS<br>40 Days DGCT |

**VII. REASON FOR SANCTION OR ACTION TAKEN**

Plotting to Escape from an Secure Institution is highly disruptive, interferes with the inmate accountability, and the orderly running of institution. It is also prohibited by Federal Law, and places individual lives in jeopardy. The sanctions were imposed to punish you for your actions and hopefully deter you from future behavior of this nature.

**VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.**

| | Yes | X | No | | |
|---|---|---|---|---|---|

**IX. DISCIPLINE HEARING OFFICER**

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| F.A. Bierschbach | *[signature]* | April 5, 2004 |
| Report delivered to inmate by: | *[signature]* K Norris | Date: 4/14/04 |

(This form may be replicated in WP)                    Replaces BP-304(52) of JAN 88

Exhibit 17 3 of 3

**Administrative Remedy No. 363028-A2**
**Part B - Response**

You appeal the October 20, 2004, decision of the Discipline
Hearing Officer (DHO) in which you were found to have committed
the prohibited act of Escape from Escort; Escape from a Secure
Institution (Low, Medium, and High Security Level and
Administrative Institutions); or Escape from a Minimum
Institution <u>With</u> Violence - Attempted (code 102A).  Specifically,
you contend the incident report was totally rewritten; that you
were denied witnesses; and that the UDC recommended that the
incident report be expunged.  You request expungement of the
incident report.

Our review of your disciplinary proceedings indicates substantial
compliance with Program Statement 5270.07, <u>Inmate Discipline and
Special Housing Units</u>.  The DHO's decision was based upon the
greater weight of the evidence as detailed in Section V of the
DHO report.  We find it reasonable for the DHO to have made this
determination.  Records indicate you appeared before the DHO,
were advised of your rights, and made a statement.  The DHO gave
greater weight of the evidence to the reporting officer's account
of the incident.  Although you dispute the charge, the evidence
is sufficient to support the finding.

Policy authorizes the rewriting of an incident report in order to
ensure that the inmate is clearly advised of the information
which serves as the basis for the charge.  This action is
consistent with policy.  Subsequent to the UDC hearing, you
requested four witnesses to appear on your behalf.  You waived
two of these witnesses at the time of the DHO hearing and the
other two appeared at the DHO hearing.  The DHO is not bound by
the recommendations of the UDC, irrespective of whether that
recommendation is to find an inmate guilty or to expunge an
incident report.  In this case, the DHO considered confidential
information to which the UDC was not privy.

Based on our review of the disciplinary record, we find the
required disciplinary procedures were substantially followed, the
greater weight of the evidence supports the DHO's decision, and
the sanctions imposed were commensurate to the severity level of
the offense and in compliance with policy.

Your appeal is denied.

June 23, 2005
Date

Harrell Watts, Administrator
National Inmate Appeals

Recd 6/28/05

Central OFF. Decision          Exhibit @ 18

must be referred to in the meetings, so long as there is at least some other facts or independent evidence to rely on.

An informant is a person (non-staff, ordinarily an inmate) who provides staff (usually at the person's initiation) information about the commission of an offense or about misconduct in an institution. A confidential informant is one whose identity must be withheld and protected for the individual's personal safety. Ordinarily, the decision ( finding that an inmate committed a prohibited act) must be supported by more than one reliable confidential source. If there is only one source, the confidential informant information must be corroborated by independently verified factual evidence linking the inmate charged to the prohibited act. Uncorroborated confidential information from a single informant is insufficient as the sole basis for a finding that an inmate committed a prohibited act, unless the peculiar circumstances of the incident and the peculiar knowledge possessed by the confidential informant is convincing enough to show that the confidential informant's information must be reliable. In an unwitnessed assault, for example, the statement of a seriously injured assault victim could be sufficient evidence to support a finding without corroborating evidence.

The reliability of a confidential informant must be established before the information provided may be used to support a finding by the UDC or DHO. Reliability may be determined by a record of
past reliability or by other factors which reasonably convince the UDC or DHO of the confidential informant's reliability. The
P.S. ◀5270.07▶

December 29, 1987

Chapter 7, Page 7

staff member providing the information to the UDC or DHO shall include a written statement of the frequency with which the confidential informant has provided information, the period of time during which the confidential informant has provided information, and the degree of accuracy of that information. If reliability is based on factors other than a history of reliability, those other factors supporting a determination of reliability must be clearly specified. Staff have an affirmative obligation to determine whether there is any basis for concluding that the confidential informant is providing false information. Neither the UDC nor the DHO may consider information obtained in exchange for the promise of a favor to support its finding.

All confidential information presented to the UDC or DHO shall be in writing and must state facts and the manner in which the confidential informant arrived at knowledge of those facts. If possible, the statement shall be signed by the confidential informant. If the confidential informant does not write a statement, the staff member receiving the information shall provide that information in language as close to the confidential informant's as possible (actual words of confidential informant where possible). The * substance of the confidential informant information must be known by all members of the decision-making body. The identity of a confidential informant must be known, at a minimum, by the Discipline Hearing Officer. Where the UDC does not make a final disposition, but refers a case to the DHO, the UDC need not know the identity of a confidential informant(s) or the substance of the information provided. Where the UDC makes a final disposition, only the UDC chairman must know the identity of the confidential informant(s). The chairman of the UDC or DHO shall include, in the record of the hearing, a statement of the basis for finding that the information provided by the

$Exhibt \, ⊕ \, 19$          7/9/2002

of conflicting witnesses (includes any witness, not only confidential informant) is presented, or there is other conflict in the evidence, the DHO should indicate in the record of the hearing the reason for believing the testimony of one witness(es) as opposed to another witness(es) or otherwise resolving the conflict. When the DHO determines that including this information in the Discipline Hearing report would jeopardize institution security, the DHO may provide the required information in a separate report, not available to the inmate.

[h. A record of the hearing and supporting documents are to be kept in the inmate central file.]

P.S. ◄5270.07►

CN-06, November 3, 1995

Chapter 7, Page 9

When the DHO finds that the inmate committed the prohibited act charged and/or a similar prohibited act reflected in the Incident Report, the DHO shall ensure that the required information is entered into SENTRY in the inmate's Chronological Disciplinary Record.

[i. The Discipline Hearing Officer shall expunge an inmate's file of the Incident Report and related documents following a DHO finding that the inmate did not commit a prohibited act. The requirement for expunging the inmate's file does not preclude maintaining for research purposes copies of disciplinary actions resulting in "not guilty" findings in a master file separate from the inmate's institution file. However, institution staff may not use or allow the use of the contents of this master file in a manner which would adversely affect the inmate. Likewise, the expungement requirement does not require the destruction of medical reports or other reports relating to a particular inmate which must be maintained to document medical or other treatment

given in a special housing unit. If an inmate's conduct during one continuous incident may constitute more than one prohibited act, and if the incident is reported in a single Incident Report, and if the DHO finds the inmate has not committed every prohibited act charged, or if the DHO finds that the inmate has committed a prohibited act(s) other than the act( s) charged, then the DHO shall record those findings clearly and shall change the Incident Report to show only the incident and code references to charges which were proved. Institution staff may not use the existence of charged but unproved misconduct against the inmate.]

The Special Housing Unit Log Sheet is stamped "Charges Expunged" and left in the central file. The charges should also be expunged from the Chronological Disciplinary Record on SENTRY. The Warden shall establish local procedures for expungement for the Incident Report and related documents as required by this section. It is suggested that, since the inmate has other records of the disciplinary action and must be advised of the not guilty finding, there should be copies of the Incident Report and the Discipline Hearing Officer report maintained in research files. The reasons for the expungement should be stated in section 5 of the discipline report. These reasons do not have to be stated on the inmate's copy of the report.

* References to significant Prohibited Acts which are not supported by disciplinary actions and hearings may not be utilized by the Bureau of Prisons so as to have an adverse impact on an inmate, specifically the forfeiture or disallowance of good time or good conduct time or a parole

Exh.b.t 20                 7/9/2002

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

## RE-HEARING

2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.)

Inmate Cahoon #06003-035 stated; "Worked with him for 1.5 years never heard him speak about it anytime."
Inmate Graika #03997-089 stated; "An inmate asked me to run a check on him, his background. When I did the big E word (*escape*) came out and I pulled myself out of the whole thing. I went to Mr. Smith and told him I thought he was being set up to watch his back.

3. The following persons requested were not called for the reason(s) given.

N/A

| 4. Unavailable Witnesses submit written statements and those statements received were considered. | Yes | | No | | N/A | X | |
|---|---|---|---|---|---|---|---|

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

SIS Report from Lt. Santisteban, dated 12-29-04

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

The information was independently cross corroborated with factual evidence gathered by the reporting staff.

### IV. FINDINGS OF THE DHO

| X | A. The act was committed as charged. | | |
|---|---|---|---|
| | B. The following act(s) was committed: | | |
| | C. No prohibited act was committed: Expunge according to Inmate Discipline PS. | | |

### V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)

The DHO finds that you committed the prohibited act(s) of Escape, code 102A. This is based on the reporting staff's statement that on 1-6-04, at approximately 0900, an investigation concluded that during the period of June through October 2003 you and other inmates actively planned an escape from FCI Pekin. Specifically, you planned to escape from FCI Pekin on December 25, 2003 by climbing the perimeter fence, using welding gloves, duct tape from Mechanical Services, and blue recreation mats for upper body protection against the razor wire. You planned to have your girlfriend, Katherine Smith meet you with a vehicle in the local community with a gun and calling card once over the fence. This report is based on information received from confidential informants and physical evidence discovered in your personal property.

The DHO also relied upon as evidence, the SIS report from Lt. Santisteban. This report contains information provided to the SIS Office, by confidential informants. The DHO finds their eyewitness account is more reliable, based upon independent factual cross corroboration with evidence found by the reporting staff. The DHO determined that including the substance of the confidential information would jeopardize institution security and will therefore not be disclosed to you. However, it is provided in a separate FOI EXEMPT memorandum.

You appeared before the DHO **denying** the charge(s) as noted in section 3 of the report.

DHo Report - compare to First one - (Exhibit 15-1)

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

## RE-HEARING

Your staff representative was present, however had no information towards mitigation of the charges.

The DHO considered the testimony of the witnesses, yet gave greater weight of evidence to the statement of the reporting staff, acknowledging the duty and obligation to report the truth and submit accurate statements. .

Additionally, the information provided by Confidential Informants offers independent cross corroboration. It is therefore, considered more credible and worthy of belief.

Therefore, the DHO finds you committed the prohibited act(s).

**VI. SANCTION OR ACTION TAKEN**

60 Days DS
40 Days DGCT

**VII. REASON FOR SANCTION OR ACTION TAKEN**

Plotting to Escape from an Secure Institution is highly disruptive, interferes with the inmate accountability, and the orderly running of institution. It is also prohibited by Federal Law, and places individual lives in jeopardy. The sanctions were imposed to punish you for your actions and hopefully deter you from future behavior of this nature.

**VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.**

| | | Yes | X | No | | |
|---|---|---|---|---|---|---|

**IX. DISCIPLINE HEARING OFFICER**

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| F.A. Bierschbach | _IABimlilil_ | November 12, 2004 |
| Report delivered to inmate by: | _KMorris_ | Date: 12/9/0r |

(This form may be replicated in WP)

Replaces BP-304(52) of JAN 88

Exhibit 15-2